**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dr. Delano L. Hebron, a married man,<br><br>    Plaintiff,<br><br>v.<br><br>Eric K. Shinseki, Secretary of Veterans Affairs,<br><br>    Defendant. | No. CV11-1547-PHX-DGC<br><br>**ORDER** |

Defendant moves to dismiss Plaintiff's complaint (Doc. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6).  The motion is fully briefed and no party has requested oral argument.  For the reasons that follow the Court will deny the motion.

**I.    Background.**

The following facts are assumed true for purposes of this motion.  Plaintiff was born in 1941 and has served as a Staff Radiologist at Carl T. Hayden VA Medical Center ("Medical Center") since 1991.  Doc. 1 at 2-3.  Plaintiff was the only member of the Radiology Department staff with two board certifications in the field of radiology.  *Id.* at 3.  Plaintiff is a member of seven relevant professional organizations, has completed extensive continuing medical education training and courses, and has coauthored several publications in the medical field.  *Id.*  In addition to Plaintiffs work for the Medical Center, he has taught radiology technologist students and conducted several medical conferences.  *Id.* at 4.

In 1995, Dr. Kilpatrick was hired as a staff radiologist at the Medical Center.  *Id.*

As the interim Chief of Radiology, Dr. Kilpatrick conducted three separate peer reviews of Plaintiff in October 1997, September 1999, and March 2001. *Id.* All three reviews were positive and described Plaintiff as a competent radiologist. *Id.* Between September 2003 and April 2004, Dr. Kilpatrick was promoted to Chief of Radiology, became Plaintiff's immediate supervisor, and was responsible for assigning work, creating schedules, evaluating the performance of radiologists, and performing other supervisory responsibilities. *Id.* at 4-5.

In August 2006, Dr. Kilpatrick referred Plaintiff to an informal peer review. *Id.* at 5. The peer review panel consisted of Kilpatrick, Dr. William Heiser, and Dr. Hermenegildo Almaria. *Id.* After looking at a sample of Plaintiff's body CT scans, the panel concluded that Plaintiff had a 31% misdiagnosis/missed diagnosis rate. *Id.* An expert retained by Plaintiff disagreed with the error rate and found only a few misdiagnoses or missed diagnoses. *Id.* On October 20, 2006, the peer review panel met with Plaintiff to discuss the results of the peer review. *Id.* During the meeting, Dr. Heiser asked Plaintiff when he would retire. *Id.* Plaintiff, surprised by the question, responded that he planned to retire in a year or two. *Id.* Dr. Heiser then told Plaintiff that he "may want to stay off CT for medical/legal reasons." *Id.* Although Dr. Kilpatrick noted in a "Report of Conference" memo that there were not enough facts to assess Plaintiff's proficiency in CT, Dr. Kilpatrick gave Plaintiff five choices as part of a plan of action: (1) have Plaintiff voluntarily rescind his CT privileges, (2) have Plaintiff's CT privileges revoked, (3) receive more education in CT, (4) have an outside radiologist assess the Plaintiff's competency, or (5) revoke all privileges. *Id.* Plaintiff chose to receive more education. *Id.*

Following the additional education courses, Plaintiff was re-evaluated by a peer review process. The panel reported a misdiagnosis/missed diagnosis rate of 13%. *Id.* at 7. Plaintiff's expert found that Plaintiff's error rate was actually 5.2%. *Id.* On September 20, 2007, Dr. Kilpatrick informed Plaintiff of the post-training re-evaluation results and stated that he would reduce Plaintiff's privileges regarding the reading of

body CT scans. *Id.* Dr. Kilpatrick told Plaintiff he was eligible to retire and implied that he should consider it. *Id.* On October 17, 2007, Dr. Kilpatrick sent a letter to the Chief of Staff and requested that Plaintiff's privileges to read CTs of the chest, abdomen, and pelvis be reduced. *Id.* Dr. Kilpatrick stated in a memorandum dated January 7, 2008, that the purpose of the peer reviews was to establish a pattern of misdiagnosis/missed diagnosis and not to focus on insignificant discrepancies. *Id.* On January 22, 2009, Plaintiff's privileges were reduced. *Id.*

On November 9, 2009, the Medical Center convened a compensation panel to review Plaintiff's compensation due to the "reassignment." *Id.* at 10. Plaintiff had been reviewed by a compensation panel on April 30, 2007, resulting in annual pay of $286,887. *Id.* At the time of the November 9, 2009 review, Plaintiff was making $299,501 annually. *Id.* The 2007 and 2009 compensation panels made identical findings with respect to Plaintiff, but the 2009 panel concluded that Plaintiff's annual compensation should be reduced to $150,000. *Id.* Plaintiff asserts that Dr. Kilpatrick both influenced and caused the reduction in pay. *Id.* Since January 8, 2006, no radiologist at the Medical Center other than Plaintiff has had his pay reduced. *Id.*

Since Dr. Kilpatrick has been Chief of Radiology, he has exercised his discretion in referring only Plaintiff and one other to the informal review process and the potential for reduction in privileges, even though Plaintiff believes other staff radiologists committed numerous significant clinical errors. *Id.* at 8. Specifically, Dr. Almaria, a staff radiologist, made many clinical errors in his X-ray and CT scan readings but was neither subjected to a special informal peer review nor suffered a reduction in privileges. *Id.* Dr. Almaria is 6.5 years younger than Plaintiff and joined the Medical Center Radiology Department in 1990. *Id.* Plaintiff asserts that Dr. Almaria has made many more and egregious clinical errors which were known to Dr. Kilpatrick and others in management. *Id.* Plaintiff also asserts that Dr. Kilpatrick discouraged staff radiologists from bringing Dr. Almaria's errors to Dr. Kilpatrick's attention or has ignored such errors. *Id.* In particular, Plaintiff asserts that Dr. Kilpatrick informed a staff radiologist

1  not to reduce such errors or safety concerns about Dr. Almaria to writing. *Id.* at 9.

2  In February 2010, Plaintiff received a proficiency report from Dr. Kilpatrick stating that Plaintiff had an overall "low satisfactory" rating. *Id.* at 15.  Dr. Kilpatrick maintains that this "low satisfactory" rating was based on Plaintiff's limited productivity and reduced CT privileges. *Id.* at 16. Plaintiff alleges that the rating was anomalous and pretextual because Plaintiff had received good ratings prior to Dr. Kilpatrick, and the justifications offered in support of the reduction in privileges were false. *Id.* at 15, 18.

**II.     Standard.**

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).  To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).[1]

---

[1] The Supreme Court in *Swierkiewicz v. Soreman N.A.*, 534 U.S. 506 (2002), which preceded *Twombly* and *Iqbal*, addressed "the question whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework set forth . . . in *McDonnell Douglas Corp. v. Green*." 534 U.S. at 508.  The Court in *Swierkiewicz* held that a plaintiff alleging employment discrimination need not establish a prima facie case at the pleading stage. *Id.*  In light of *Twombly* and *Iqbal*, the approach in *Swierkiewicz* has been questioned.  Compare *Boykin v. KeyCorp*, 521 F.3d 202, 212–13 (2d Cir. 2008) (pre-*Iqbal* case concluding that *Twombly* "affirmed the vitality" of *Swierkiewicz* ), and *Al–Kidd v. Ashcroft*, 580 F.3d 949, 974 (9th Cir. 2009) (stating that *Twombly* "reaffirmed"

### III.   Analysis.

Plaintiff alleges that Defendant violated the Age Discrimination in Employment Act Amendments of 1978, 29 U.S.C. § 633a ("ADEA").  The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  In the absence of direct evidence of age discrimination, Plaintiff can rely on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this approach, Plaintiff must first establish a prima facie case of age discrimination by showing that he (1) was a member of the protected class (at least age 40), (2) performed his job satisfactorily, (3) was subjected to an adverse employment action, and (4) was treated less favorably than employees who were both substantially younger and similarly situated.  *See Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207–08 (9th Cir. 2008); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1280–81 (9th Cir. 2000) (discussing elements in the context of termination).

Plaintiff has alleged facts satisfying the first three elements:  he was over 40 years old when his compensation was reduced, he performed his job satisfactorily, and his compensation was reduced to $150,000 annually.  Defendant argues that Plaintiff failed to satisfy the fourth element for three reasons: (1) Dr. Almaria is not "substantially younger" than Plaintiff, (2) the unnamed similarly situated employees who have received more favorable treatment do not satisfy the pleading standard, and (3) the remarks made to Plaintiff about retirement do not constitute evidence of age discrimination.

### A.   Substantially Younger.

Defendant argues that because Dr. Almaria is only 6.5 years younger than

---

*Swierkiewicz*'s "reject[ion of] a fact pleading requirement for Title VII employment discrimination"), rev'd on other grounds sub nom. *Ashcroft v. Al–Kidd*, 131 S.Ct. 2074, (2011), with *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (*Swierkiewicz* "has been repudiated by both *Twombly* and *Iqbal* . . . at least insofar as [*Swierkiewicz*] concerns pleading requirements and relies on *Conley* [*v. Gibson*, 355 U.S. 41, (1957)]."). The Court need not address this issue because Plaintiff's complaint alleges facts sufficient to state a prima facie case of age discrimination.

1   Plaintiff, Plaintiff has not alleged that a person substantially younger was treated more
2   favorably. The Ninth Circuit has not established a minimum age difference for ADEA
3   claims, and has held that a difference of five years is sufficient to establish a prim facie
4   case. *See Grosjean v. First Energy Corp*, 349 F.3d 332, 339 (6th Cir. 2003) ("The Ninth
5   Circuit has not settled on a standard for substantial age difference"); *Douglas v.
6   Anderson*, 656 F.2d 528, 533 (9th Cir. 1981) (holding that an age difference of 5 years
7   was sufficient to establish a prima facie case of age discrimination). Although Defendant
8   asserts that *Douglas* is incorrect, it is Ninth Circuit authority that the Court must follow.[2]

In addition, if other direct or circumstantial evidence supports an inference of discrimination, the age difference becomes less important. *See Douglas*, 656 F.2d at 533 (stating that even where a plaintiff is replaced by an older employee it "will not necessarily foreclose prima facie proof if direct or circumstantial evidence supports an inference of discrimination"). Here, Plaintiff alleges that Defendant suggested he should retire and reduced his annual salary when he did not.

### B.  Similarly Situated Employees.

Plaintiff alleges that "other similarly-situated radiologists did not receive 'low satisfactory' ratings." Doc. 1 at 15. Defendant argues that these allegations do not satisfy the pleading requirements of *Iqbal*. It is true that conclusory allegations in a complaint are not accepted as true, *Iqbal*, 129 S. Ct. at 1949, but even if the Court does not accept these allegations, Plaintiff has alleged that Dr. Almaria, a younger and similarly situated employee, was treated more favorably. This allegation satisfies the fourth element of a prima facie case at the pleading stage.

### C.  Remarks made to Plaintiff about Retiring.

Defendant argues that the two comments made to Plaintiff about his ability to

---

[2] Defendant cites *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1209 (9th Cir. 2008), for the proposition that a 9.5 year age difference was insufficient for an ADEA claim. *Diaz* concerned a statistical analysis that involved more than a simple age difference, and ultimately held that the statistical differences were sufficient to support an inference of discrimination. *Id.* at 1210.

retire cannot be construed as evidence that Plaintiff was too old for his job.  Defendant argues that Plaintiff's pay was reduced because of the negative peer review evaluations and not because of his age.  At the pleading stage, all well-pled factual allegations are taken as true and considered in the light most favorable to the non-moving party. *Cousins*, 568 F.3d at 1067.  Plaintiff has alleged that during the October 2006 peer review meeting, Dr. Heiser asked Plaintiff when he planned to retire and then presented Plaintiff with five unappealing choices.  During the September 2007 re-evaluation of Plaintiff, Dr. Kilpatrick told Plaintiff he was eligible to retire and implied that Plaintiff should.  Following these remarks and Plaintiff's subsequent refusal to retire, Plaintiff's annual salary was reduced to $150,000.  Plaintiff also asserts that each of the panel's error rate findings was contested by an expert.  These allegations support a plausible inference that Plaintiff was discriminated against because of his age.

**IT IS ORDERED** that Defendant's motion to dismiss (Doc. 15) **is denied.**

Dated this 11th day of April, 2012.

_____
David G. Campbell
United States District Judge